C. R. WRIGHT and G. L. McKinney, co-partners doing business as Wesco Insurance Agency, a fictitious partnership, Plaintiff,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation, Defendant.

Civ. No. 65–245.

United States District Court
W. D. Oklahoma.

Sept. 22, 1966.

Rinehart, Rinehart & Rinehart, El Reno, Okl., for plaintiff.

Fenton, Fenton, Smith & McCaleb, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

The Plaintiffs (Wesco) were soliciting agents for the Yukon, Oklahoma, area for the Defendant, Hartford Accident & Indemnity Company, a corporation (Hartford). In this relationship it is agreed that Wesco did not have authority to bind Hartford with reference to insurance coverage, it being necessary in each instance to submit an application for insurance to a representative of Hartford in Oklahoma City, Oklahoma, and obtain his approval before any insurance became binding.

On July 13, 1964, Wesco orally by telephone placed an order for insurance with Hartford for the Kroutil Building Co., Inc., of Yukon, Oklahoma (Kroutil). Wesco contends that this order was for public liability coverage with limits of $50,000.00 and $100,000.00 and property damage coverage with limits of $25,-000.00. Hartford contends that Wesco ordered the same coverage and the same limits as Kroutil had previously carried with Hartford, the previous insurance having been terminated due to a lapse of activity on the part of Kroutil. All previous insurance placed with Hartford by Wesco for Kroutil provided only for public liability coverage with limits of $50,-000.00 for each person and $100,000.00 for each accident. The handwritten office memorandum made by the representative of Hartford receiving the order from Wesco on July 13, 1964, provides that the order was for the same coverage

and limits as before for Kroutil. On July 24, 1964, Hartford prepared what is known as a "scratch sheet" from the abovementioned office memorandum. This provided for public liability coverage only with limits of $50,000.00 and $100,000.00. On July 28, 1964, Hartford prepared a policy of insurance from the "scratch sheet" for Kroutil which was thereafter mailed to Wesco along with what is called a "daily".[1] Wesco was to deliver the original policy to Kroutil and retain the "daily" in its office. Hartford is unable from any records to establish just when the original policy and "daily" were mailed from its office in Oklahoma City to Wesco at its office in nearby Yukon, Oklahoma. It could not have been earlier than July 28, 1964, but could have been on July 28, 1964, or thereafter. Wesco also has no records to positively establish receipt of the policy but claims that the policy was received either on August 6, 1964, the day before the loss involved herein (which occurred on August 7, 1964), or was received on August 8, 1964, the day after the loss. The original policy, as prepared and mailed by Hartford some time on or after July 28, 1964, provided no coverage for property damage but provided public liability coverage with limits of liability in the amount of $5,000.00 and $100,-000.00.

On August 7, 1964, a property damage loss occurred in connection with construction activities of Kroutil in Yukon, Oklahoma. On the same date, Wesco in the person of C. H. Wright, one of the partners and the one who handled the matter for Wesco, called Hartford and reported the loss. Hartford checked its office file on Kroutil and promptly advised Wright that the insurance ordered and issued for Kroutil did not provide coverage for property damage which was the type of loss reported to have been sustained by Kroutil. At this time, Hartford discovered the error in the policy it had issued to Kroutil regarding the limits of liability for the public liability coverage, and in due course issued an endorsement correcting the coverage from $5,000.00 to $50,000.00 for each person. Wright testified that the Hartford representative in the conversation of August 7, 1964, stated that he would correct the errors in the policy, whereas, the testimony of the Hartford representative was that he stated he would correct the $5,000.00–$50,000.00 error but Hartford had no coverage for property damage. Further, this representative testified that Wright made no request on him to send an adjuster to handle the loss and did not insist that Hartford had coverage and should handle the loss, but appeared satisfied with the statement of the representative that Hartford had no coverage on property damage and no responsibility for the property damage loss reported.

Kroutil and the C. R. Anthony Company, which had sustained the reported property loss at the hands of Kroutil, were both in touch with Wesco and both were insisting that Wesco assume responsibility for the loss. Wesco agreed with them to handle the loss and undertook to salvage the damaged merchandise involved. In due course, Wesco remitted to the C. R. Anthony Company the sum of $4214.32 for damaged merchandise and by salvage operations conducted by Wesco this loss was reduced to $3449.17. Wesco sues herein for this amount and other elements of alleged damage which were not supported by any evidence at the trial.

Hartford produced evidence that on August 19, 1964, Mrs. Ballard, an employee of Wesco, by telephone, ordered property damage coverage for Kroutil with limits of $25,000.00. The office memorandum made by a representative of Hartford in connection with the call reveals a call by Mrs. Ballard for Wesco placing an order for property damage coverage for Kroutil with limits of $25,-000.00 and also that the public liability

---

1. A "daily" is a condensation of the insurance issued which omits many of the details of the policy but provides general information as to what the policy consists of.

policy should be corrected to show a $50,-000.00 lower limit of liability. This office memorandum was dated 7–19–64, and provided that the property damage covered ordered should be effective 7–19–64. Hartford asserts that the date of 7–19–64 in both instances in the office memorandum was an error; that the call actually was received and the office memorandum actually was made on 8–19–64 rather than on 7–19–64. Wesco does not contend that it communicated or placed an order for any insurance for Kroutil with Hartford on 7–19–64. Hartford prepared an endorsement providing property damage coverage for Kroutil with limits of $25,000.00 in accordance with the aforesaid office memorandum and said endorsement provided for an effective date of 7–19–64. Hartford also contends that this endorsement is erroneous as to the effective date and should be considered herein to provide for an effective date of 8–19–64, the actual date the order for the new insurance for Kroutil was made by Mrs. Ballard, an employee of Wesco. It appears that on August 20, 1964, the representative of Hartford who received the order from Mrs. Ballard for Wesco and another employee of Hartford traveled from Oklahoma City to Yukon, contacted the office of Wesco, and then proceeded to the construction site where Kroutil was working. This visit was for the purpose of inspecting the operation of Kroutil to ascertain the property damage risk involved. The evidence of Hartford then indicates that on August 21, 1964, or the day after the abovementioned trip to Yukon, the property damage endorsement for Kroutil was ordered written and it was processed in due course and mailed to Wesco.

From the foregoing, it is apparent that the evidence is in conflict on several points and it is necessary for the Court to determine from the evidence presented the true facts of the situation.

The Court finds and concludes from the evidence that on July 13, 1964, Wesco ordered from Hartford insurance for Kroutil of the same coverage and the same limits as was previously in existence with Hartford for Kroutil. This was not an order for property damage insurance inasmuch as Kroutil had never previously carried this type of insurance. This finding and conclusion by the Court is supported by the office memorandum of Hartford covering the July 13, 1964, order from Wesco, the "scratch sheet" prepared from the office memorandum, and the actual policy of insurance which was thereafter issued by Hartford except for the error in the lower limit of coverage which was corrected upon discovery. The Court also believes and concludes that the policy of insurance as issued was mailed to Wesco by Hartford some time either on or shortly after July 28, 1964, and was thus received by Wesco several days in advance of the loss involved which occurred on August 7, 1964. The evidence indicates that Wesco made no contact or complaint with Hartford regarding the original policy or what it covered until the inquiry after the loss occurred on August 7, 1964.

The Court further finds and concludes from the evidence that on August 7, 1964, Wesco did not request Hartford to handle the loss or send an adjuster after Hartford stated to Wesco that its policy of insurance did not cover property damage for Kroutil. The Court further finds and concludes from the evidence that on August 17, 1964, Wesco requested property damage coverage for Kroutil from Hartford with limits of $25,000.00; that the office memorandum of Hartford erroneously showed an incorrect date of July 19, 1964, instead of August 19, 1964, as it should have been; that accordingly the endorsement for the property damage coverage to Kroutil bore the erroneous date of July 19, 1964, and should for the purposes of this litigation be corrected to show and be considered as showing the true and correct date of the order for said coverage, namely, August 19, 1964.

In view of the foregoing findings and conclusions by the Court, Hartford did not provide property damage coverage for Kroutil until August 19, 1964, which coverage was issued by Hartford pursu-

ant to a request for this insurance made by Wesco for Kroutil for the first time on that date. Hartford was not requested to issue property damage coverage for Kroutil on July 13, 1964, and the original policy did not and should not have included this type of coverage. Kroutil therefore did not have property damage coverage with Hartford on August 7, 1964, the date of the property damage loss involved herein, and Hartford had no liability or responsibility to Kroutil for said property damage loss.

Wesco claims it is entitled to recover herein from Hartford for the Kroutil loss under the doctrine of subrogation.[2] In this connection, Wesco asserts that it was secondarily liable behind Hartford to Kroutil and that Wesco had an interest in the matter to protect by handling the Kroutil loss.

■ But under the findings and conclusions of the Court, as set out above, Hartford had no liability, primary or otherwise, to Kroutil because it had not been asked to and had not agreed to nor had it issued property damage coverage to Kroutil until after the loss occurred which is involved herein. Further, on August 7, 1964, the day of the loss, and upon inquiry from Wesco and before Wesco undertook to handle the loss, Wesco was informed by Hartford that it had no coverage for the property damage loss of August 7, 1964, and had no responsibility for the same.

Thus, the doctrine of subrogation is not available herein to Wesco and against Hartford for the reason that Hartford was not primarily liable to Kroutil and had no duty or obligation whatsoever to discharge or pay the property damage loss sustained by Kroutil. 83 C.J.S. Subrogation § 7, page 599.

■ If, on or before July 13, 1964, Kroutil had ordered property damage coverage from Wesco and Wesco failed to procure the same, then Wesco would be liable to Kroutil for this negligence or other breach of duty on its part. But this is primary liability from Wesco to Kroutil and not secondary liability behind Hartford. 29 A.L.R.2d 171.

■ Under these circumstances, Wesco is not entitled to rely upon the doctrine of subrogation and recover from Hartford the loss it undertook to pay on its own in the face of a disclaimer of liability by Hartford. Hartford did not issue property damage protection to Kroutil until after the loss involved herein and did nothing to encourage Wesco to assume this loss. It is not equity to hold Hartford liable for a loss it did not insure and which it promptly and properly disclaimed. Under subrogation Wesco would stand in the shoes of Kroutil against Hartford. Hartford having no liability to Kroutil for the property damage loss involved herein occurring on August 7, 1964, Wesco can therefore have no recourse against Hartford under subrogation. 83 C.J.S. Subrogation § 7, page 599.

In view of the foregoing, it is unnecessary for the Court to consider the other defense raised by Hartford that the actual property damage experienced by Kroutil was not a loss covered by its property damage coverage.

Wesco is not entitled to recover herein against Hartford. Counsel for Hartford will prepare an appropriate judgment based on the foregoing and submit the same to the Court. Rule 58, Federal Rules of Civil Procedure, 28 U.S.C.

2. The doctrine of subrogation is defined in 83 C.J.S. Subrogation § 5, page 588, as follows:

"No general rule can be laid down which will afford a test in all cases for application of the doctrine of subrogation, and whether or not it is applicable depends on the facts and circumstances of each case as it arises; but ordinarily the remedy is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter."